The **BILINGUAL BICULTURAL COALITION OF MASS MEDIA, INC.,**
Appellant,

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Avco Broadcasting Corporation,**
Intervenor.

No. 72–2205.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 3, 1973.

Decided Feb. 13, 1974.

Juan Rocha, Jr., San Antonio, Tex., for appellant. Joseph L. Gibson, Washington, D. C., was on the brief for appellant.

Joseph Volpe, III, Counsel, Federal Communications Commission with whom John W. Pettit, Gen. Counsel and Joseph A. Marino, Associate Gen. Counsel, Federal Communications Commission, were on the brief, for appellee.

Edgar W. Holtz and Richard S. Rodin, Washington, D. C., were on the brief for intervenor.

Before BAZELON, Chief Judge, ROBB, Circuit Judge, and VAN PELT,* United States Senior District Judge for the District of Nebraska.

BAZELON, Chief Judge:

Appellants challenge the Federal Communications Commission's renewal of a broadcast license on the ground that the station's employment practices discriminate against Mexican-Americans. Their appeal requires us to consider once again[1] the role of statistical evidence in establishing discrimination.

I

On April 28, 1971, the Avco Broadcasting Company filed its license renewal application for WOAI–TV, San Antonio, Texas. The central assertion of appellants' July 1 Petition to Deny was based on statistics:

> Of the Station's eighty-five (85) employees, only 12% are Mexican-Americans. In San Antonio where the total population is 830,000 and 48% of the population is Mexican-American, the Station has failed to achieve parity in employment of Mexican-Americans. . . . The record points to the conclusion that the

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. *See* Stone v. F.C.C., 151 U.S.App.D.C. 145, 466 F.2d 316 (1972).

Station is practicing *de facto* segregation.[2]

Appellants' Petition also alleged that when the station did hire Mexican-Americans, it chose those who did not belong to community organizations, relegated them to unimportant jobs, and prevented them from effectively representing their fellow Mexican-Americans.[3] None of appellants' allegations were supported by affidavits.

Avco's Opposition to appellants' Petition alleged that the station had not discriminated against hiring Mexican-Americans, but in fact had developed programs to insure fair treatment for all minority groups. Under one of these programs, for example, the station hired "qualifiable, but not qualified" Mexican-Americans for specific jobs and gave them job training.[4] As to its treatment of Mexican-American employees, Avco denied that they were relegated to unimportant tasks:

Of these 13 employees, *none* were in the lower unskilled job categories; rather these employees occupied positions of responsibility and skill within the station's operation. Spanish-surnamed Americans at WOAI–TV were employed in such jobs as Writer and Investigative Reporter, Art Director, News Reporter and Photographer, Assistant Community Services Director, Stenographer, Broadcast Technician, Cameraman, and Film Clerk.[5]

All of these allegations were supported by an affidavit from the station's General Manager. In addition, Avco submitted affidavits from four Mexican-American employees in which they asserted that their jobs were responsible ones and they were not restricted from reporting on matters of concern to the Mexican-American community.

On November 15, 1972 the F.C.C. found that appellants had not raised "substantial and material questions of fact which established a *prima facie* case" for denying license renewal and therefore were not entitled to a hearing under the Communications Act.[6] The Commission then denied their Petition and granted the renewal.[7] Appellants challenge the failure to hold a hearing.

II

Appellants present no evidence of refusals to hire individual Mexican-Americans, but rely instead on the disparity between the percentage of Mexican-Americans in the community and the percentage employed by the station. In Stone v. F.C.C. this court held that such a showing did not establish a *prima facie* case for denying license renewal when the licensee had a policy of recruiting minority group members and placing them in responsible jobs.[8] On petition for rehearing in *Stone* we noted that "statistical evidence of an extremely low rate of minority employment" could constitute a *prima facie* showing of discrimination, but that the statistics in that case—7% black employment in an area 24% black—were "within the zone of reasonableness."[9] The two opinions in *Stone* should, of course, be read together—a disparity that is reasonable in light of a recruitment policy might not be reasonable in its absence.

2. Petition to Deny at 19.

3. The Petition included several other allegations not raised in this appeal.

4. Opposition to Petition to Deny at 12.

5. *Id.* at 11.

6. Memorandum Opinion and Order, F.C.C. 72–1003, November 15, 1972 at 9. *See also* Communications Act of 1934, as amended, 47 U.S.C. § 309(d); *Stone, supra,* 151 U.S. App.D.C. at 150–152, 466 F.2d 316.

The F.C.C. found appellants' Petition procedurally defective because it was unsupported by affidavits. Nevertheless, the Commission treated the Petition as an informal objection filed pursuant to § 1.587 of its rules.

7. *Id.* Pursuant to Section 309(d) of the Communications Act, the Commission found that grant of the license renewal would serve the public interest.

8. 151 U.S.App.D.C. at 158, 159, 466 F.2d at 329–330 (1972).

9. 151 U.S.App.D.C. at 161, 466 F.2d at 332.

In the instant case, the licensee has an extensive recruitment and placement program[10] and appellants' statistical showing is quite similar to that in *Stone*.[11] That does not, however, end the matter. This is a developing area of the law—*Stone* represented an initial effort, not a final codification. While we did not endorse the statistical challenge raised in *Stone*, we did not signal satisfaction with the status quo on employment discrimination.

The Commission is aware that statistics alone do not provide ideal evidence of discrimination. From *Stone* to the present case, it has insisted that groups challenging license renewals show "specific instances of discrimination or a conscious policy of exclusion."[12] This insistence is understandable, but unrealistic. Discrimination may be a subtle process which leaves little evidence in its wake. Yet challenging groups have limited resources and no procedural tools, since discovery is allowed only when a Petition to Deny is set for hearing.[13] Thus where, as here, challengers rely on a disparity between minority employment and minority population they are faced with a dilemma—no hearing is allowed, yet without a hearing there is no mechanism for gathering evidence to determine the underlying reasons for the disparity.

■ New approaches are clearly necessary. The Commission must consider how best to provide a fair and reasonable opportunity for those challenging license renewals to seek explanations for the underemployment of minority groups. Providing challengers with the power to take depositions might be considered. Perhaps even the Commission itself would wish to scrutinize a station's employment practices when a disparity between employment and population comes to light. Choosing the precise method of dealing with allegations of discrimination is, of course, a matter for the Commission. We note, for example, the recent creation within the F.C.C. of an Equal Employment Office designed to play a role in this area.[14] But if minorities are not given *some* means for developing the reasons for statistical disparities, hearings may have to be required based on such disparities alone, in order to provide the tools of discovery.

■ In the circumstances of this case we need not decide whether to remand for further proceedings in light of this opinion since, as a practical matter, a remand would serve little purpose—Avco's license, expires again in a few months.[15] In the ensuing license renewal proceeding, appellants will have the opportunity to avail themselves of any new procedures the Commission may develop and to exhaust their own efforts to obtain information in support of their allegations.

■ Apart from the issue of employment statistics, appellants' contentions are without merit. There is no basis for the claim that Avco must hire only

10. In addition to hiring and training "qualifiable" Mexican-Americans, Avco recruited through media and schools popular in the minority community and maintained systematic contact with minority group organizations. Memorandum Opinion and Order at 8.

11. Appellants' statistics are disputed (*see* Intervenor's brief at 11), yet even assuming the figures most favorable to them—12% Mexican-American employment in an area 48% Mexican-American—the disparity is similar to that in *Stone*.

12. Memorandum Opinion and Order at 7; *cf. Stone, supra,* 151 U.S.App.D.C. at 158, 159, 466 F.2d 316.

13. *See* Report and Order, 11 F.C.C.2d 185, 187, 11 R.R.2d 1691, 1693 (January 11, 1968) ("These procedures may be used for purposes of discovery in any case of adjudication . . . which has been designated for hearing"). *See also* "The F.C.C.'s New Discovery Procedures," XXII Federal Communications Bar Journal 3 (1968).

14. Washington Post, January 15, 1974, p. B9, col. 8.

15. WOAI–TV's license expires on August 1, 1974.

Mexican-Americans who belong to certain organizations, nor is there evidence in the record contradicting Avco's substantial showing that it treats Mexican-American employees fairly.[16] Of course, procedures developed to aid inquiry into hiring discrimination may also be used to shed light on the treatment of minority group employees.

The Commission's Memorandum Opinion and Order is

Affirmed.

ROBB, Circuit Judge (concurring):
I concur in the result.

In my judgment the only question here is whether the petitioners made a case before the Commission. They did' not make a case and that should be the end of the matter. It is not for us to give the Commission an advisory opinion on methods for dealing with allegations of discrimination. Furthermore, I am not willing to express any view as to the circumstances that may require a hearing in some future case. We can consider that question if and when it. is presented on a proper record.

---

16. A hearsay allegation that Avco coerced a reporter to make certain "sworn declarations" is unsupported by an affidavit from the reporter, although he no longer works for the station in question. *See* Supplemental Petition to Deny at 12. Rejection of this allegation was therefore within the Commission's discretion.